IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | |
| Plaintiff, | No. 2:12-cv-2897-LKK-EFB |
| vs. | |
| ROSA MARIA CEBALLOS, individually and dba EL TAHUR SPORTS BAR aka SPORTS BAR EL TAHUR, | FINDINGS AND RECOMMENDATIONS |
| Defendant. | |

This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1) for hearing on plaintiff's motion for entry of default judgment against defendant Rosa Maria Ceballos, individually and dba El Tahur Sports Bar aka Sports Bar El Tahur. Dckt. No. 16.  A hearing on the motion was held on July 24, 2013. Attorney Gary Decker appeared on behalf of plaintiff; no appearance was made on behalf of defendant.  For the reasons that follow, and as stated on the record at the hearing, the court recommends that plaintiff's application for entry of default judgment be granted in part.

/////

/////

1

I.    BACKGROUND[1]

Plaintiff, a California corporation, is a closed-circuit distributor of sports and entertainment programming. Compl. ¶ 6; Gagliardi Aff. ¶ 3, ECF No. 17.[2] Pursuant to a contract, plaintiff acquired exclusive nationwide commercial exhibition licensing rights to a televised program entitled "'Good v. Evil': Miguel Angel Cotto v. Antonio Margarito, WBA Super World Light Middleweight Championship Fight Program," with a broadcast date of Saturday, December 3, 2011 (the "Program").[3] Compl. ¶ 3; Gagliardi Aff. ¶ 3. Thereafter, plaintiff entered into sublicensing agreements with various commercial entities across North America, through which it granted limited public exhibition rights to the entities for the benefit and entertainment of the patrons within the entities' respective establishments (e.g., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs, etc.). Compl. ¶ 15; Gagliardi Aff. ¶ 3. Plaintiff made transmission of the Program available only to its commercial customers, which were commercial entities that had paid plaintiff a commercial sublicense fee to broadcast the program. Gagliardi Aff. ¶ 8; *see also* Compl. ¶ 16. For example, to exhibit the Program in a commercial establishment that had a fire code occupancy limit of 75 persons, the commercial sublicense fee would have been $1200. Gagliardi Aff. ¶ 8 & Ex. 1.

Defendant is alleged to be the owner, operator, licensee, permittee, person in charge of, and/or person in control of El Tahur Sports Bar aka Sports Bar El Tahur, located at 2539 East Main Street, Stockton, CA 95205 ("El Tahur"). Compl. ¶¶ 7-10; *see also* Gravelyn Aff., ECF

---

[1] These background facts are taken from plaintiff's complaint and the affidavits submitted in support of plaintiff's application for default judgment. ECF Nos. 1, 8, 9.

[2] The court notes that the affidavit of Joseph Gagliardi, filed in support of plaintiff's application, is replete with legal and factual arguments, requests for relief from the court, and statements that do not appear to be based on Mr. Gagliardi's personal knowledge. Such use of an affidavit or declaration is inappropriate. Therefore, the undersigned has not considered those arguments and requests for relief in making a recommendation regarding plaintiff's application for default judgment.

[3] The Program included "all under-card bouts and fight commentary encompassed in the television broadcast of the event . . . ." Compl. ¶ 14.

No. 16-3, at 2-3. Defendant did not obtain a license to exhibit the Program from plaintiff. Compl. ¶¶ 11, 17; Gagliardi Aff ¶ 7.

On December 3, 2011, plaintiff's investigator, Gary Gravelyn of Gravelyn & Associates, entered El Tahur and observed the unauthorized broadcast of a portion of the Program on two televisions of varying sizes. Gravelyn Aff. at 2. Gravelyn attests that he observed the end of the match and the declaration of Rodriguez as the winner, plus the introduction of the next fight. *Id.* Gravelyn's affidavit approximates El Tahur's capacity at 75 people and states that he observed approximately 47 patrons inside the establishment during the brief time he was present.[4] *Id.*

On November 29, 2012, plaintiff filed this action alleging that defendant unlawfully intercepted and intentionally broadcasted the Program at El Tahur for the purpose of direct or indirect commercial advantage or private financial gain. *See generally* Compl. Plaintiff alleges four claims for relief, which are labeled as "Counts" in the complaint. Plaintiff's first claim for relief alleges that defendant engaged in the unauthorized publication or use of communications in violation of the Federal Communications Act of 1934, 47 U.S.C. §§ 605 *et seq*.[5] Compl. ¶¶ 13-22. Its second claim alleges that defendant engaged in the unauthorized interception, reception, divulgence, display, and exhibition of the Program at El Tahur in violation of 47 U.S.C. §§ 553 et seq.[6] Compl. ¶¶ 23-27. Plaintiff's third claim alleges a common law claim of conversion, *id.* ¶¶ 28-31, and its fourth claim alleges a violation of California Business and Professions Code §§ 17200 *et seq*., *id.* ¶¶ 32-41.

/////

---

[4] Gravelyn's affidavit states that he entered El Tahur at approximately 7:58 p.m., observed the broadcast of a portion of one of the undercard bouts on the televisions in question, and left at approximately 8:04 p.m. Gravelyn Aff. at 2-3.

[5] Title 47 U.S.C. § 605 and provisions that follow prohibit the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming.

[6] Title 47 U.S.C. § 553 and related provisions prohibit the unauthorized interception or receipt, or assistance in the intercepting or receiving, of cable service.

3

Plaintiff filed a proof of service with the court that demonstrates that on February 27 and March 1 and 2, 2013, plaintiff, through a process server, attempted personal service on defendant at El Tahur. ECF No. 8. The proof of service states that process was ultimately left with "JANE DOE – REFUSED LAST NAME – PERSON IN CHARGE" on March 2, 2013, with instructions to deliver the documents to defendant. Plaintiff's process server subsequently mailed a copy of the summons, complaint, and related documents to defendant at the address for El Tahur on March 4, 2013. *Id.*

On May 1, 2013, plaintiff requested entry of default against defendant, ECF No. 12, which was entered on May 2, 2013, ECF No. 13. On June 21, 2013, plaintiff filed the instant application for default judgment, ECF No. 16, and mail served a copy of the motion on defendant. The application seeks judgment on plaintiff's claims for violation of 47 U.S.C. § 605 and for common law conversion.[7] Plaintiff requests judgment in the amount of $111,200. No response to plaintiff's application for default judgment is on record in this action.

II.     LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. *See* Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

---

[7] The application does not specifically request judgment on plaintiff's claim under 47 U.S.C. § 553 or on plaintiff's claim that defendant violated California Business and Professions Code §§ 17200 *et seq.*, and plaintiff's memorandum in support of the application does not address those claims. Accordingly, the undersigned does not address those claims in these findings and recommendations.

4

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted). However, although well-pleaded allegations in the complaint are admitted by defendant's failure to respond, "necessary facts *not* contained in the pleadings, and claims which are *legally insufficient*, are *not* established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating that although a default established liability, it did not establish the extent of the damages).

III.   ANALYSIS

    A.   <u>Appropriateness of the Entry of A Default Judgment Under the Eitel Factors</u>

        1.   <u>Factor One:  Possibility of Prejudice to Plaintiff</u>

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be without another recourse for recovery. Accordingly, the first *Eitel* factor favors the entry of a default judgment.

### 2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175.

The Federal Communications Act prohibits, among other things, commercial establishments from intercepting and broadcasting radio communications to its patrons. *See* 47 U.S.C. § 605(a). In relevant part, 47 U.S.C. § 605(a) states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

The U.S. Court of Appeals for the Ninth Circuit has determined that satellite television signals are covered communications under 47 U.S.C. § 605(a). *DIRECTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008).

Although plaintiff has not alleged whether the transmission that defendant intercepted was intercepted through a cable system or a satellite television signal, largely due to defendant's failure to appear or defend himself in the action, plaintiff seeks a default judgment only on its

/////

/////

claim brought pursuant to 47 U.S.C. § 605.[8]  While courts have been divided on when § 605 applies versus § 553 in cases involving both satellite signals and cable signals, this court need not resolve the split of authority because, based on defendant's default, she has admitted that she pirated the Program in violation of § 605, and plaintiff does not seek damages under § 553.  *See J & J Sports Prods., Inc. v. Juarez*, 2011 WL 221634, at *3 (E.D. Cal. Jan. 21, 2011).  The undersigned agrees with plaintiff that under the circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of defendant's failure to appear or defend herself in this action, plaintiff should not suffer the resulting prejudice.  In any event, the split of authority has little practical impact in this case because the undersigned recommends the entry of a judgment in the total amount of $10,000, which is the maximum, non-enhanced statutory damages available under both 47 U.S.C. § 553(c)(3)(A)(ii) and 47 U.S.C. § 605(e)(3)(C)(i)(II).  Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency of its pleadings under the *Eitel* factors are concerned, the complaint and record before the undersigned favor entry of a default judgment.

### 3. Factor Four:  The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).  Here, plaintiff seeks a significant amount of damages, i.e., $111,200.  However, plaintiff's request for statutory damages and damages for conversion are tailored to defendant's specific wrongful conduct.  Plaintiff seeks statutory damages under the federal statutes implicated by its claims and, although plaintiff requests $110,000 in statutory damages, the

---

[8] The undersigned does not address the merits of, or sufficiency of the allegations in support of, plaintiff's state law claim for conversion.  As discussed more fully below, the undersigned need not reach plaintiff's conversion claim because the recommended statutory damages, if awarded, will sufficiently compensate plaintiff such that an award for conversion damages would be duplicative.

7

statutes involved contemplate such an award under certain circumstances.[9] Under these circumstances, the undersigned concludes that this factor favors the entry of a default judgment.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its statutory claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists.[10] *See, e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc.*, 219 F.R.D. at 500; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

### 5. Factor Six: Whether the Default Was Due to Excusable Neglect

Upon review of the record before the court, the undersigned finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Plaintiff made numerous attempts to personally serve defendant with the summons and complaint and ultimately effectuated substituted service of those documents on defendant. Moreover, plaintiff served defendant by mail with its application for default judgment and supporting papers. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant has not appeared in this action to date. Thus, the record suggests that defendant has chosen not to defend himself in this action, and not that the default resulted from any excusable neglect. Accordingly, this *Eitel* factor favors the entry of a default judgment.

---

[9] Whether plaintiff is entitled to an award of this size is a different issue, which the undersigned addresses in greater detail below.

[10] Defendant's failure to file an answer in this case further supports the conclusion that the possibility of a dispute as to material facts is minimal.

8

          6.       <u>Factor Seven: The Strong Policy Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *ACS Recovery Servs., Inc. v. Kaplan*, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010); *Hartung v. J.D. Byrider, Inc.*, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009). Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of a default judgment.

Upon consideration of the *Eitel* factors, the undersigned concludes that plaintiff is entitled to a judgment by default against defendant and recommends the same. What remains is the determination of the amount of damages to which plaintiff is entitled.

    B.    <u>Terms of the Judgment to Be Entered</u>

After determining that a party is entitled to a default judgment, the court must determine the terms of the judgment to be entered. Considering plaintiff's briefing and the record in this case, including the affidavits and declarations submitted by plaintiff, the undersigned concludes that plaintiff is entitled to an award of statutory damages in the amount of $10,000 as a result of defendant's unlawful interception and broadcast of the Program, and recommends the same.

Pursuant to § 605, a court may award statutory damages of "not less than $1,000 or more than $10,000" for violation of the Federal Communications Act, and may also award enhanced damages of up to $100,000 if the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. §§ 605(e)(3)(C)(i)(II), (e)(3)(C)(ii).

Here, plaintiff seeks a judgment in the amount of $111,200. Plaintiff's application for default judgment and proposed order indicate that this sum consists of $110,000 for a violation

of 47 U.S.C. § 605(e)(3)(B)(iii) and (e)(3)(C)(ii), and $1200 as compensatory damages arising from defendant's alleged act of conversion. ECF No. 16-4 at 2; *see also* Compl. ¶ 22.

Plaintiff's investigator's affidavit states that El Tahur had an approximate seating capacity of 75 and that there were approximately 47 patrons inside the establishment on the night in question. Gravelyn Aff. at 2-3. The affidavit further states that El Tahur was unlawfully broadcasting the Program on two televisions in mounted or elevated locations. *Id.* at 2. Although plaintiff's investigator was charged $5.00 to enter the establishment, plaintiff provided no evidence that El Tahur prepared any special advertising for the broadcast of the Program, that El Tahur had increased business as a result of the broadcast, or that defendant is a repeat offender with respect to intercepting transmissions of the type at issue here.[11] Balancing these facts with the widespread problem of piracy and the need for an award sufficient to deter future piracy, the undersigned recommends an award of statutory damages in the amount of $10,000. That is an amount sufficient to compensate plaintiff, and to address any profit that can be inferred by the facts stated in the investigator's declaration that defendant improperly derived from the violation, and to deter future violations. Thus, on the record before the court, the undersigned does not find that this case merits an award of enhanced damages.

Plaintiff also seeks actual damages for defendant's alleged tortious act of conversion in the amount of $1200, which consists of the fee that defendant would have had to pay to plaintiff in order to lawfully broadcast the Program through a contractual sublicense.[12] The undersigned does not recommend an award of damages with respect to plaintiff's claim for conversion. The statutory damages provisions at issue serve not only a deterrent function, *see J & J Sports Prods.*

---

[11] Additionally, according to the declaration from plaintiff's process server, the process server was informed by a Jane Doe that defendant was not in business. ECF No. 8 at 2.

[12] Damages for conversion are measured, in relevant part, by the value of the property at the time of the conversion. Cal. Civ. Code § 3336; *see also Stan Lee Trading, Inc. v. Holtz*, 649 F. Supp. 577, 581 (C.D. Cal. 1986); *Spates v. Dameron Hosp. Ass'n*, 114 Cal. App. 4th 208, 221, 7 Cal. Rptr. 3d 597, 608 (Ct. App. 2003).

10

*v. Orellana*, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010), but also a compensatory function, which is evidenced by provisions that permit the award of statutory damages or actual damages in a civil action. *See* 47 U.S.C. § 605(e)(3)(C)(I); 47 U.S.C. § 553(c)(3)(A)(i). Here, the recommended award of statutory damages in the amount of $10,000 sufficiently compensates plaintiff, and this case does not present a set of circumstances where an additional award might be warranted. Accordingly, the undersigned recommends that plaintiff be awarded no damages on its conversion claim.

IV.  CONCLUSION

In view of the foregoing findings, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's application for default judgment, ECF No. 16, be GRANTED;

2. The court enter judgment against defendant on plaintiff's claim brought pursuant to 47 U.S.C. § 605(a);

3. The court award statutory damages in an amount of $10,000.00 to plaintiff; and

4. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 25, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE